**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

RODRIGUE AKAMEYONG DJIWAJE,

Petitioner,

v.

PAMELA BONDI, *et al.*,

Respondents.

Case No. 2:26-cv-00344-RFB-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Rodrigue Akameyong Djiwaje's First Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his arrest and continued civil detention at Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Petitioner asserts that his arrest was unlawful under the Immigration and Nationality Act ("INA"), the Fourth Amendment of the United States Constitution, and the Administrative Procedure Act ("APA"), and that his continued detention based on said unlawful arrest violates his due process rights under the Fifth Amendment, necessitating his release. For the following reasons, the Court grants the Petition on Petitioner's statutory and due process grounds for relief and finds immediate release from detention is the appropriate remedy.

I.    BACKGROUND

A.  Petitioner Rodrigue Akameyong Djiwaje

The Court makes the following findings based on the verified First Amended Petition and exhibits provided by parties. Petitioner Rodrigue Akameyong Djiwaje came to the United States

from his native country of Gabon in December 2010, on a valid P1 athlete/entertainer visa for employment as an acrobat and/or tightrope walker. See Amended Petition, ECF No. 15 at 3; Form I-213, ECF No. 16-2 at 4. On November 2, 2025, Petitioner was arrested on a bench warrant by the Las Vegas Metropolitan Police Department ("LVMPD") who then contacted ICE. See ECF No. 15 at 3. ICE subsequently "issued" an I-200 Administrative Warrant for Mr. Rodrgiue's arrest. See I-200 Administrative Warrant, ECF No. 15-1. This warrant includes Petitioner's name, the date of November 2, 2025, as well as the last name ("Barbosa") and badge number of a Supervisory Detention and Deportation Officer ("SDDO"). See id. The warrant further indicates that a probable cause determination has been made as to Petitioner's removability from the United States, specifically based upon "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Id. However, most notably for the purposes of deciding Petitioner's instant claims, this warrant is unsigned. See id.

Over the last five years, Petitioner has had a handful of criminal arrests, but his only convictions appear to be for a violation of a protective order and misdemeanor drug possession, the latter of which was a result of Petitioner's November 2, 2025 arrest. See ECF No. 16-2 at 4. On November 5, 2025, ICE arrested Petitioner at CLVDC and transported him to Henderson Detention Center. See ECF No. 16-2. The following day, on November 6, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), which charged Petitioner as being "admitted to the United States, but . . . removable" under "Section 237(a)(1)(B) of the Immigration and Nationality Act" ("INA") for "remain[ing] in the United States for a time longer than permitted" "after admission as a nonimmigration under Section 101(a)(15)" in violation of the INA "or any other law of the United States." Notice to Appear, ECF No. 16-3. Petitioner is presently detained in the custody of Respondents at NSDC in Pahrump, Nevada. See ECF No. 15 at 4. The government has asserted 8 U.S.C. § 1226(a) as the authority and basis for Petitioner's detention. ECF No. 16 at 2 ("Since an appeal is pending at the Board [of Immigration Appeals], Petitioner is not in the removal period. Petitioner is detained under 236(a) of the INA 8 U.S.C 1226(a).").

**B. Legal Background**

An administrative warrant is distinct from a judicial warrant: its legal force is not derived from the review and signature of a neutral, detached magistrate affirming a finding of probable cause and adherence to the particularity requirement, but rather, from its own governing regulations. Section 1226 of the INA, the relevant detention provision for the instant case,[1] provides that "[o]n a warrant issue by the Attorney General, an alien may be arrested and detained." 8 U.S.C. § 1226(a). Per 8 C.F.R. § 236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official:

> At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.

8 C.F.R. § 236.1(b)(1). In addition, only certain immigration officials may sign and serve I-200 warrants. See 8 C.F.R. §§ 287.5(e)(2)–(3) (listing the fifty-three categories of immigration officials who may issue an arrest warrant for immigration violations, so long as the issuing official has been authorized or delegated such authority and eight categories of officials who are permitted to serve I-200 warrants so long as they have "successfully completed basic immigration law enforcement training").

Immigration officers are authorized to make warrantless arrests in limited circumstances under the INA. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i.) the noncitizen is in the United States in violation of such laws or regulations and (ii.) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4)-(5) (providing other circumstances that justify warrantless arrest).

---

[1] Parties agree that § 1226(a) applies to Petitioner. See ECF Nos. 15 at 6-7, 16 at 2.

## II.    LEGAL STANDARD

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting the Federalist No. 84 (Alexander Hamilton). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted).

- 4 -

**III.    DISCUSSION**

Section 1226(a) of the INA—the provision Respondents assert as the basis for Petitioner's detention—requires that a noncitizen detained under the section's authority be arrested pursuant to a I-200 administrative warrant. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). In this case, the parties do not dispute that the relevant I-200 warrant is unsigned. The question presented as a result is whether Petitioner's continued detention under § 1226(a) is lawful absent a signed warrant for his arrest.

Numerous courts, including the D.C. Circuit Court of Appeals, when faced with the instant question, have held that the I-200 warrant must be signed by the authorized official who issues it to justify discretionary detention under § 1226(a), as this is the sole indication that the requisite probable cause determination has been made by the authorized official at the time of arrest under the INA. See N.S. v. Dixon, 141 F.4th 279, 282–283 (D.C. Cir. 2025) ("With each detainer, an ICE policy requires that it issue an I-200 Warrant of Arrest [or an I-205 Warrant of Removal/Deportation, the latter of which is not involved in this case]. An I-200 form must be signed by an authorized immigration officer who states that he or she has "probable cause to believe" the named alien is removable.") (citation omitted); Castañon Nava v. Dep't of Homeland Sec., 806 F.Supp.3d 823, 848 (N.D. Ill. 2025) ("A supervisor needs . . . to sign the I-200"); Joaquin Q. L. v. Bondi, No. 26-cv-233 (LMP/DTS), 2026 WL 161333, at *2 (D. Minn. Jan. 21, 2026) (collecting cases wherein judges concluded "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)."). This Court adopts and incorporates those findings herein. Absent a signature, the Court finds that the I-200 does not supply immigration authorities the power to arrest or detain noncitizens like Petitioner:

> Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a). [Section] 1226 is not even triggered unless an arrest warrant is issued and [ ] if an alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release 'the arrested alien' are likewise not triggered.

Sergio P. v. Bondi, No. 26-CV-1538 (ECT/DTS), 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (cleaned up); see also Singh v. Bondi, No. CIV-26-43-J, 2026 WL 483651, at *12 (W.D.

Okla. Feb 12, 2026), report and recommendation adopted, No. CIV-26-43-J, 2026 WL 483482 (W.D. Okla. Feb 20, 2026) ("Because Petitioner was improperly detained pursuant to § 1226(a), his instant detention was unlawful from the moment it began."). The Court accordingly finds that no lawful I-200 administrative warrant was issued as to Petitioner.

Therefore, the only remaining justification for Petitioner's arrest under the relevant provisions of the INA is 8 U.S.C. § 1357(a)(2)'s warrantless arrest exception, which requires a showing that Mr. Rodrigue was "likely to escape before a warrant could be obtained." 8 U.S.C. § 1357(a)(2). However, Respondents do not make such a showing; they do not even mention the warrantless arrest exception in their briefing. Concerningly, Respondents provided a mere half-page of legal argument in their Return to the Amended Petition, without a single citation to support the argument that "Petitioner's Arrest and Detention Was Lawful and his Petition should be denied." See ECF No. 16 at 2–3. Instead, they spend a single paragraph listing DHS forms relevant to Petitioner (none of which satisfy Respondents' own standards and regulations to effectuate an arrest of Petitioner), punctuated by a conclusory assertion that "Petitioner's arrest was lawful because he was clearly put on notice of what he was being arrested for and detained [for.]" Id. at 3. As this Court has already stated, the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200's compliance with governing regulations—not "notice." Thus, the Court rejects the government's "argument" defending ICE agents' unlawful arrest of Petitioner and finds that Petitioner's seizure by Respondents was unlawful under the INA based upon Respondents' failure to follow the governing regulations and requirements under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1(b)(1), and 8 U.S.C. § 1357(a)(2).

Furthermore, the Court finds Respondents' continued detention of Petitioner is prohibited by the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U. S. ___, 145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001)

("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (holding the "Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

"[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government, which violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992) & Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

The detention of Petitioner without individualized cause to do so, particularly where there is no evidence of a lawful arrest or a finding of probable cause, clearly violates substantive due process, because the government has asserted no special justification that outweighs Petitioner's constitutionally protected liberty interest. See Zadvydas, 553 U.S. at 691–92 ("once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness."). Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Respondents here have not articulated *any* interest—let alone a compelling interest—to justify Petitioner's detention. Accordingly, in addition to finding that Petitioner's arrest and subsequent detention is unlawful under the governing regulations of the INA, this Court further

- 7 -

finds that Petitioner is currently detained in violation of his substantive due process rights.

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the constitutional injury Petitioner has suffered and continues to suffer due to Respondents' unlawful seizure, the Court orders Respondents immediately release Petitioner from custody on his own recognizance as a remedy for these statutory and due process violations. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner Rodrigue's Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from custody **BUT BY NO LATER THAN** by **9:00 a.m. on April 7, 2026**.

**IT IS FURTHER ORDERED** that Parties shall file a Joint Status Report on **April 8, 2026** confirming that Petitioner has been released in compliance with this Order.

The docket incorrectly lists Petitioner's name as "Akameyong Djiwaje Rodriguez." Records from the Executive Officer for Immigration Review ("EOIR") and Petitioner's counsel show that the correct spelling of his name is "Rodrigue Akameyong Djiwaje." The Clerk of Court is therefore **ORDERED** to update the docket with the correct spelling of Mr. Rodrigue Akameyong Djiwaje's name.

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to the 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** April 6, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 8 -